## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IRVIN HARRIS**                                        **CIVIL ACTION**

**VERSUS**                                              **NO. 20-3018**

**STATE OF LOUISIANA,**                                 **SECTION "D"(4)**
**WARDEN DARREL VANNOY**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. ***See* 28 U.S.C. § 2254(e)(2)**.[1]

## I.   Factual and Procedural Background

Petitioner Irvin Harris ("Harris") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 12, 2013, Harris and co-defendant Jerremy R. Coleman were charged by Bill of Information in Jefferson Parish with two counts of manslaughter for the killing of Nikiaybh Westerfield and Dave Harrison.[3] Harris entered a plea of not guilty to the charges on December 13, 2013.[4] However, on February 14, 2014, Harris, Coleman, and codefendants Tavis C. Joseph, Kanetra Whyte (Harris's mother), and Edward Harris (Harris's father) were charged by Jefferson Parish Grand Jury in a five count indictment which superseded

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 7.

[3] St. Rec. Vol. 1 of 19, Bill of Information, 12/12/13.

[4] *Id*., Minute Entry, 12/13/13.

the original bill.[5]  In the indictment, Harris, Coleman, and Joseph were charged in two counts for the second degree murders of Westerfield (count one) and Harrison (count two).  Harris, Whyte, and Edward Harris were charged with conspiracy to obstruct justice after the murders (count five).  Harris and Coleman also were each charged with illegal possession of a stolen weapon (counts three and four, respectively).

The record reflects that, on August 13, 2013, Jefferson Parish Sheriff's Deputies were called to the scene of a shooting in the 4000 block of Paige Janette Drive in the Woodmere Subdivision in Harvey, Louisiana.[6]  When the deputies arrived, they found two victims, Westerfield and Harrison, in a Chevy Blazer parked at the back of this high crime neighborhood.  Westerfield was in the driver's seat, and Harrison was in the backseat on the passenger side.  Both men had suffered multiple, fatal gunshot wounds.

At the scene outside of the vehicle, deputies recovered ballistics material, one black and red Nike sandal, and a cell phone, which they later determined belonged to Harris.  Inside of the vehicle, the deputies found more ballistic materials, two guns (a Kimber .40 caliber semiautomatic firearm and a Colt .38 caliber revolver), and three more cell phones.  The deputies also found a clear bag containing marijuana in Westerfield's hand and a wooden rosary on his lap.  They also noticed a blood transfer on the front passenger seat that suggested to them that another person had been in the vehicle.

While at the scene, deputies were notified that a shooting victim had been brought to West Jefferson Hospital.  A deputy went there to interview the person to determine whether there was

---

[5] *Id*., Indictment, filed 2/20/14 (charges dated 2/14/14); *id*. at 9-10, Grand Jury Return, 2/20/14.
[6] The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Harris*, 190 So. 3d 466, 470-73 (La. App. 5th Cir. 2016); St. Rec. Vol. 10 of 19, 5th Cir. Opinion, 15-KA-485, pp. 3-9, 4/13/16.

any connection to the Woodmere shootings.  That person, identified as codefendant Coleman, told the deputy that he had been in the "Haydel August area" of Jefferson Parish with some friends, and an unknown individual there shot him.  Deputies canvassed the area he indicated and were unable to locate evidence that a shooting took place in that area.

Deputies also reviewed the surveillance video from West Jefferson Hospital and found that Coleman arrived at the emergency room in a black SUV about eight minutes after the Woodmere shooting was reported.  The video also showed two other individuals, later identified as Harris and codefendant Joseph, bringing Coleman into the emergency room.  Deputies determined that the eight-minute period was sufficient time for these men to get from the Woodmere scene to drive to the hospital.

The cell phones found by deputies contained calls logs and text messages from which deputies determined that Coleman planned to purchase marijuana from Westerfield.  The men corresponded about a price and a meeting place.  The text messages and phone calls between Westerfield and Coleman established that they were communicating within a half hour or so just before the shooting.

In addition, deputies located photographs and videos on the phones.  Some of the photographs showed Coleman wearing a rosary that appears to be the same rosary that was found in the car on Westerfield's lap.  There also were pictures and videos of Harris armed with a Glock handgun and Coleman armed with a Kimber firearm.  One photograph from Harris's phone showed the Glock handgun and its serial number, HSB144.  The same gun is seen in a picture on the lap of a person wearing white pants, just like those worn by Harris in other pictures.  The Glock pictured with Harris was later identified as belonging to Troy Savage.  Savage's Glock model 27,

bearing the same serial number, HSB144, was reported stolen from Savage's vehicle sometime between May 14 and 17, 2013.

On August 15, 2013, deputies stopped a black GMC SUV that had been flagged as a vehicle of interest in the investigation. Harris was driving the vehicle and was detained for questioning. A Jefferson Parish detective at the scene of the stop saw through the open doors of the SUV what he believed to be an "obvious blood transfer." He also noticed a Nike slipper halfway underneath the carpet that was nearly identical to the shoe found on the scene of the Woodmere shootings. Harris agreed to go back to the detective's bureau for an interview.

Once at the bureau, Harris was read his *Miranda* warnings and questioned by a detective about the night of August 13, 2013. Harris told the detective that he was with Coleman in Coleman's black GMC SUV in the Woodmere Subdivision that night. He claimed, however, that at some point, Coleman dropped him off at his girlfriend's house in Marrero and left. Harris also told the detective that Joseph later returned with Coleman in the SUV. He stated that he learned at that time that Coleman had been shot. Harris claimed that he got in the SUV to bring Coleman to the hospital.

When the detective asked Harris about his cell phone being at the Woodmere murder scene, Harris at first explained that he lost his phone that night. Harris later told the detective that he must have left the phone with Coleman in the SUV. At that point, the detective left the interview room to take a phone call in his office from another investigator. As he was entering his office, Harris left the interview room and fled the building through a back door. He left a cell phone behind; detectives later determined that the phone belonged to Coleman.

The next day, deputies located and arrested Harris with a warrant. Harris agreed to give another statement to the detectives. He was again advised of his rights and indicated that he

understood and wished to waive those rights.  During his conversation with the detective, Harris again stated that, on the night of the shootings, he was with Coleman in Coleman's SUV.  He stated, however, that, when Coleman decided to purchase some marijuana, he had Coleman drop him off at his girlfriend's residence on Rue Racine in Marrero.  Harris claimed that he left his phone in Coleman's SUV so he could have uninterrupted time with his girlfriend, Kierra Jacks.  Harris claimed that he learned a short time later that Coleman had been shot.  He claimed that he then went with Joseph to the scene and found Coleman driving his SUV.  The detective believed this would have been physically impossible because of Coleman's condition after being shot.

The detective also interviewed Harris's girlfriend Jacks to verify Harris's alibi.  However, neither she nor any other person interviewed indicated that Harris was at her house on the night of the shootings.

Based on the investigation, sheriff's deputies were able to determine that there were five weapons at the scene of the shooting and that at least four were used.  Based on the physical evidence recovered in and out of the car and from the bodies of the victims, detectives determined that two shots were fired into the car while the front passenger door was open.  The casings found in the car were consistent with someone leaning into an open passenger door and firing a weapon. A transfer pattern of blood was found on the front passenger seat indicating that blood was wiped onto the surface.  The Colt revolver recovered from the scene had two spent or fired cartridge casings in it with four empty chambers.  The Kimber weapon recovered was fired twice and the second round jammed rendering the weapon useless.

In addition to these two weapons recovered at the scene, detectives determined that two 9 mm caliber weapons and one .40 caliber Glock were used in the crime.  The .40 caliber casings recovered outside the vehicle were linked to the stolen Glock belonging to Savage that had been

in Harris's possession.  The grouping of these casings found at the scene indicated a "focused area of fire" from the rear towards the front driver's side, which was consistent with the stationary vehicle and a slightly mobile shooter.  At least one .40 caliber round consistent with being fired from a Glock was found in Westerfield's body.

The 9 mm casings recovered from inside the car were consistent with the shooter being on the passenger side, reaching in, and firing two shots at one or both of the occupants of the vehicle. Detectives determined this was done to help an injured perpetrator, Coleman, get out the car.  A swab taken from the Kimber .40 caliber pistol and a swab of blood taken from the front passenger seat of the Chevy Blazer contained DNA that was consistent with that of Coleman.

While Harris was incarcerated, the deputies obtained a telephone call recording during which Harris spoke to his parents, codefendants Whyte and Edward Harris.  During the call, Harris and his father discussed developing reasons why Harris's cellphone would have been at the murder scene and how bleach could be used to remove evidence from Harris's person.

On November 7, 2014, Edward Harris pleaded guilty to the conspiracy charge (count five) and was sentenced to 10 years in prison.[7]  Whyte also pleaded guilty to the conspiracy charge (count five) on December 1, 2014, and was sentenced to 3 years in prison, which was suspended, and she was placed on 3 years active probation.[8]  In a separate trial held July 27, 2015, Joseph was found guilty of two counts of second degree murder and later sentenced to life in prison.[9]  It also appears that on March 30, 2015, the charges against Coleman were amended to manslaughter, and the disposition of those charges is not provided in the record.[10]

---

[7] St. Rec. Vol. 1 of 19, Motion in Limine, 12/8/14.
[8] *Id*.
[9] *State v. Joseph*, 208 So. 3d 1036, 1039 (La. App. 5th Cir. 2016).
[10] St. Rec. Vol. 1 of 19, Indictment, 2/20/14 (handwritten amendment dated 3/30/15).

In the meantime, Harris was tried before a jury on December 9 through 11, 2014, and found guilty as charged on two counts of second degree murder (counts one and two), illegal possession of a stolen weapon (count three), and conspiracy to obstruct justice (count five).[11]  On January 12, 2015, the state trial court denied Harris's motions for new trial and for post-verdict judgment of acquittal.[12]  At a January 16, 2015, hearing, the state trial court sentenced Harris on the two counts of second degree murder to concurrent life sentences without benefit of parole, probation, or suspension of sentence.[13]  The court also sentenced him to serve concurrent terms of five years on the weapons charges and 20 years for conspiracy.[14]  The court also denied Harris's motions for departure from the mandatory minimum sentence and to reconsider the sentence imposed.[15]

On direct appeal, Harris's retained counsel asserted the following errors:[16] (1) the evidence was insufficient to support the verdict; and (2) the state trial court erred by allowing inadmissible hearsay statements at trial.  On April 13, 2016, the Louisiana Fifth Circuit affirmed Harris's convictions for second degree murder and illegal possession of a weapon and reversed his conspiracy conviction.  In affirming the convictions, the court found no merit in Harris's claims. However, with regard to the conviction for conspiracy to obstruct justice, the court held that the state did not meet its burden of proving that an overt act occurred towards completing the conspiracy to obstruct justice.[17]  Following this ruling, the state trial court issued amended

---

[11] *Id.*, Trial Minutes, 12/9/14; *id.,* Trial Minutes, 12/10/14; *id.,* Trial Minutes, 12/11/14; *id.*, Jury Verdict, 12/11/14; St. Rec. Vol. 8 of 19, Trial Transcript, 12/9/14; St. Rec. Vol. 9 of 19, Trial Transcript, 12/10/14; *id.*, Trial Transcript, 12/11/14; St. Rec. Vol. 10 of 19, Trial Transcript (continued), 12/11/14.

[12] St. Rec. Vol. 1 of 19, Minute Entry, 1/12/15; *id.*, Motion for New Trial, 1/7/15; *id.*, Motion for Post-Verdict Judgment of Acquittal, 1/7/15; St. Rec. Vol. 10 of 19, Hearing Transcript, 1/12/15.

[13] St. Rec. Vol. 1 of 19, Sentencing Minutes, 1/16/15; St. Rec. Vol. 10 of 19, Sentencing Transcript, 1/16/15; St. Rec. Vol. 11 of 19, Correction to 1/16/15 Transcript (1/4/16).

[14] St. Rec. Vol. 1 of 19, Sentencing Minutes, 1/16/15.

[15] *Id.*; *id.*, Motion to Depart From Minimum Mandatory Sentence, 1/15/15; *id.*, Motion to Reconsider Sentence, 1/16/15; *id.*, Trial Court Order, 1/20/15.

[16] St. Rec. Vol. 10 of 19, Appeal Brief, 2015-KA-485, 12/4/15.

[17] *Harris*, 190 So. 3d at 470-73; St. Rec. Vol. 10 of 19, 5th Cir. Opinion, 15-KA-485, 4/13/16.

sentencing minutes on February 15, 2017, recognizing that the conviction and sentence for the conspiracy count were reversed and vacated.[18]

On May 12, 2017, the Louisiana Supreme Court denied Harris's counsel-filed writ application without stated reasons.[19]  Harris's convictions and sentences were final 90 days later, on August 10, 2017, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

More than two years later, on June 10, 2019, Harris sent a packet of papers entitled Appendix of Exhibits in support of his post-conviction application to the state trial court.[20]  On June 26, 2019, the state trial court denied Harris relief because there was no application for post-conviction relief or memorandum in support related to the packet of exhibits for the court to review.[21]  On August 5, 2019, the court also denied Harris's request for an extension of time to prove that he mailed an application to the court before the exhibits.[22]

On August 14, 2019, the Louisiana Fifth Circuit granted Harris's writ application for the limited purpose of transferring his application for post-conviction relief to the state trial court for consideration.[23]  The Court determined that Harris established that he gave his timely post-

---

[18] St. Rec. Vol. 2 of 19, Amended Sentencing Minutes, 2/15/17.

[19] *State v. Harris*, 220 So. 3d 746 (La. 2017); St. Rec. Vol. 17 of 19, La. S. Ct. Order, 2016-K-0902, 5/12/17; La. S. Ct. Writ Application, 16-K-902, 5/12/16.

[20] St. Rec. Vol. 2 of 19, Appendix of Exhibits, 6/20/19 (dated 6/10/19); St. Rec. Vol. 3 of 19, Appendix of Exhibits (continued), 6/20/19; St. Rec. Vol. 4 of 19, Appendix of Exhibits (continued), 6/20/19.

[21] St. Rec. Vol. 4 of 19, Trial Court Order, 6/26/19.

[22] *Id.*, Trial Court Order, 8/5/19; Request for Extension and Notice of Intent, 7/30/19.  The court granted Harris until September 4, 2019, to file a writ application with the Louisiana Fifth Circuit.  *Id.*, Trial Court Order (2), 8/5/19.

[23] *State ex rel. Harris v. Vannoy*, No. 19-KH-358, 2019 WL 3819663, at *1 (La. App. 5th Cir. Aug. 14, 2019); St. Rec. Vol. 12 of 19, 5th Cir. Order, 19-KH-358, 8/14/19; 5th Cir. Writ Application, 19-KH-358, efiled 7/26/19.

conviction application to prison officials for mailing on May 10, 2019, and the clerk of the state trial court received it on May 13, 2019, although the application was not filed into the record.[24] The court sent the matter back to the trial court for further proceedings on the application deemed filed on May 10, 2019.

On October 24, 2019, after receiving a response from the State, the state trial court denied Harris's post-conviction application.[25]  The court recognized seven claims asserted by Harris:[26] (1) the evidence was insufficient to support the convictions; (2) the scientific evidence was erroneously admitted and his counsel was ineffective for not challenging it; (3) the state trial judge and district attorney violated their oaths of office; (4) the state trial judge violated his oath by discriminating in grand and petit jury selection, and his counsel was ineffective for failing to object to the jury composition; (5) counsel was ineffective for failing to voir dire jurors about their stress levels; (6) the prosecution committed misconduct by using false testimony from the ballistics expert; and (7) a non-unanimous jury verdict is unconstitutional.

The state trial court held that Harris's first and second claims were barred from review by La. Code Crim. Proc. art. 930.4 as repetitive or successive.[27]  The court alternatively found that the second claim was also meritless.  The court also held that Harris's sixth claim was barred by La. Code Crim. Proc. art. 930.4 and, alternatively, the claim, along with claims three, four, and five, were barred as unsupported under La. Code Crim. Proc. art. 926(B)(3).  The court further held that Harris's seventh claim was barred from review by La. Code Crim. Proc. art. 926(B)(3)

---

[24] *State ex rel. Harris*, 2019 WL 3819663, at *1; St. Rec. Vol. 12 of 19, 5th Cir. Order, 19-KH-358, 8/14/19.
[25] St. Rec. Vol. 5 of 19, Trial Court Order, 10/24/19; St. Rec. Vol. 4 of 19, State's Response, 10/22/19; Trial Court Order, 8/22/19.
[26] St. Rec. Vol. 5 of 19, Trial Court Order, 10/24/19.
[27] *Id*.

because it was not preserved for review by objection at trial and could have been but was not raised on appeal.

The Louisiana Fifth Circuit denied Harris's subsequent writ application finding that his first and second claims were barred by La. Code Crim. Proc. art. 930.4.[28]  The court further held that claim two (alternatively) and claim six, as well as all of Harris's ineffective assistance of counsel claims, were meritless.  The court also held that his fourth and seventh claims were meritless.

On September 8, 2020, the Louisiana Supreme Court denied Harris's related writ application holding that he failed to prove ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and failed to satisfy his burden of proof as to the other claims.[29]

## II.    <u>Federal Petition</u>

On January 13, 2021, after correction of certain deficiencies, the clerk of this Court filed Harris's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[30] (1) the evidence was insufficient to convict; (2) his rights were violated by the systemic discriminatory selection of the grand and petit jury, and *Batson* violations through exclusion of jurors based on race; (3) counsel was ineffective for failing to challenge the grand and petit jury compositions; (4) counsel was ineffective for failing to question jurors about their existing stress levels; and (5) prosecutorial misconduct for allowing false testimony from the ballistics expert.

---

[28] St. Rec. Vol. 13 of 19, 5th Cir. Order, 19-KH-575, 1/15/20; 5th Cir. Writ Application, 19-KH-575, efiled 11/26/19 (dated 11/25/19).
[29]*State v. Harris*, 301 So. 3d 13 (La. 2020); St. Rec. Vol. 17 of 19, La. S. Ct. Order, 2020-KH-00291, 9/8/20; La. S. Ct. Writ Application, 20-KH-291, efiled 2/13/20 (dated 2/13/20).
[30] ECF Nos. 7, 7-1.

The State filed a response in opposition asserting that Harris's federal petition should be dismissed as untimely filed.[31]  Alternatively, the State also argues that Harris has not exhausted state court review of certain arguments asserted in connection with his claims of insufficient evidence (claim one), jury discrimination (claim two), and ineffective assistance of counsel (claim three).  The State also urges that these new arguments are in procedural default because Harris would be barred from seeking additional review upon his return to state court.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to Harris's petition, which is deemed filed in this Court under the mailbox rule on November 5, 2020.[33]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Harris's federal petition was not timely filed under the AEDPA.  For the following reasons, his petition should be dismissed as time-barred.

---

[31] ECF No. 16.

[32] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Harris's  pleadings indicate that he delivered the petition and related pleadings to the prison legal department on November 5, 2020, for electronic delivery to this court, which was done the same day.  ECF No. 1-1, at 49; ECF No. 7-1, at 49.

**IV.**    **Statute of Limitations**

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final.[34] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Harris's conviction was final under federal law on August 10, 2017. Pursuant to § 2244, Harris had one year from that date, or until August 10, 2018, to timely file a federal petition for habeas corpus relief, which he did not do. Thus, literal application of the statute would bar Harris's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

**A.**    **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements,

---

[34]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Harris's case, the AEDPA filing period began to run on August 11, 2017, the day after his conviction was final under federal law.  The period continued to run without interruption for one year, or until August 10, 2018, when it expired.  Harris had no properly filed state post-conviction or other collateral review pending during that time period.  Harris waited an additional nine months, until May 10, 2019,[35] to seek state post-conviction relief for the first time.  However, this pleading which was filed after expiration of the AEDPA one-year filing period provides him no tolling benefit.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.")

Therefore, Harris's federal petition, filed under the mailbox rule on November 5, 2020, was filed almost two years and three months after the AEDPA filing period expired on August 10, 2018.  His untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

### B.    <u>No Equitable Tolling</u>

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  However, equitable tolling is warranted only in situations where the petitioner was actively misled

---

[35] The Louisiana Fifth Circuit determined that on May 10, 2019, Harris gave prison officials a post-conviction application for mailing to the state trial court, and the clerk of the state trial court received that pleading on May 13, 2019, although it was never filed into the record.  *State ex rel. Harris*, 2019 WL 3819663, at *1; St. Rec. Vol. 12 of 19, 5th Cir. Order, 19-KH-358, 8/14/19.

or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Harris has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. He is not entitled to equitable tolling, and his petition should be dismissed as untimely filed.

### C.    No Other Excuse or Exception to Time Bar

Harris has urged no other excuse or exception to avoid the expiration of the one-year AEDPA limitations period in this case, and his petition must be dismissed as untimely. He has not alleged, asserted, nor provided a credible showing of his actual, or factual, innocence based on newly discovered evidence in any way to excuse this untimely filed federal habeas petition. *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). No such claim or high-level of proof has been offered to this Court, nor has any such claim been established or exhausted in the state courts.

The fact that Harris's has asserted ineffective assistance of counsel claims does not provide an exception to his untimely federal filing. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do *not* provide a basis for review of an untimely filed federal petition. In *Martinez*, the Court held that a *state court imposed* "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17). In this case, however, is not based on a state-imposed bar to review.

Instead, the bar at issue in this federal court arises from Harris's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do *not* address or

provide an excuse for the untimely filing of a federal habeas petition.  *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* excuse the untimely filing of Harris's federal petition.

Harris's federal petition deemed filed on November 5, 2020, was not timely filed within the one-year AEDPA statute of limitations period which expired on August 10, 2018.  There is no statutory tolling, equitable tolling, or other exception applicable to or that would excuse his untimely filing.  Harris's petition was not timely filed and should be dismissed for that reason.

## V.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Harris's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 25th day of June, 2021.

KAREN WELLS ROBY
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.